714 A.2d 315

NEW BRUNSWICK CELLULAR TELEPHONE COMPANY, D/B/A COMCAST CELLULAR ONE, PLAINTIFF–RESPONDENT, v. BOROUGH OF SOUTH PLAINFIELD BOARD OF ADJUSTMENT, DEFENDANT–APPELLANT, AND TED DABROWSKI, KAZ DABROWSKI, KARL KOLAR, SALLY KOLAR, VINCENT J. DOTOLI AND LOUISA DOTOLI, INTERVENORS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 24, 1997—Decided October 17, 1997—Remanded by Supreme Court April 24, 1998—Resubmitted June 8, 1998—Decided June 25, 1998.

D'Annunzio, J.A.D., filed a dissenting opinion.

Before Judges SHEBELL, D'ANNUNZIO and A.A. RODRIGUEZ.

*Borrus, Goldin, Foley, Vignuolo, Hyman, Stahl & Clarkin, P.C.,* attorneys for defendant-appellant, Borough of South Plainfield Board of Adjustment (*James F. Clarkin, III,* and *Rosalind Westlake,* on the brief).

*Gregory J. Czura,* attorney for plaintiff-respondent, New Brunswick Cellular Telephone Company d/b/a Comcast Cellular One.

*Vincent J. Dotoli,* attorney for intervenors-appellants, Ted Dabrowski, Kaz Dabrowski, Karl Kolar, Sally Kolar, Vincent J. Dotoli and Louisa Dotoli.

*Hiering, Dupignac & Stanzione, P.C.,* attorneys for *Amicus Curiae* Bell Atlantic Mobile, Inc. (*Richard D. Stanzione* and *Eli L. Eytan,* on the brief).

SHEBELL, P.J.A.D.

Our decision in the within matter, *New Brunswick Telephone v. South Plainfield,* 305 *N.J.Super.* 151, 701 *A.*2d 1281 (App.Div. 1997), having contained a dissent by Judge D'Annunzio, was appealed as-of-right to the Supreme Court. Upon motion for summary reversal, the Court, by order dated April 12, 1998, denied the motion but "summarily remanded to the Appellate Division for reconsideration in the light of *Smart SMR v. Fairlawn [Fair Lawn],* 152 *N.J.* 309, 704 *A.*2d 1271 (1908 [1998])."

Upon reconsideration, we have carefully reviewed the arguments set forth in the parties' remand briefs and have reconsidered the entire record in light of *Smart SMR v. Fair Lawn, supra*. In our previous opinion, we noted that "the public interest at stake" under *Sica v. Board of Adjustment of Township of Wall,* 127 *N.J.* 152, 165–66, 603 *A.*2d 30 (1992) was clearly identified. *New Brunswick Tel., supra,* 305 *N.J.Super.* at 168, 701 *A.*2d 1281. In this regard, we accepted the Board's evaluation, which was well grounded in the testimony presented at the hearings, that "the proposed use is significantly less compelling than other types of beneficial uses...." *Id.* We concluded that the Board properly balanced the positive and negative criteria to determine whether the variance could be granted without substantial detriment to the public good. *Id.* at 169, 701 *A.*2d 1281.

Thus, we are satisfied that our decision in the within matter fully comports with the law as declared by the Supreme Court in *Smart SMR v. Fair Lawn, supra.* Therefore, we reaffirm our decision reversing the Law Division's determination that the Board acted arbitrary, capricious, and unreasonable.

Our reversal of the Law Division's judgment reversing the Board stands by majority vote of this court.

D'ANNUNZIO, J.A.D. (dissenting).

This is a supplement to my original dissent occasioned by the Supreme Court's remand for reconsideration in light of *Smart SMR v. Fair Lawn Bd. of Adjustment,* 152 *N.J.* 309, 704 *A.*2d 1271 (1998).

Although *Smart* refused to recognize a mobile communication facility as an inherently beneficial use "at this time," *id.* at 329, 704 *A.*2d 1271, the Court recognized that Smart's telecommunications facility "serves the general welfare and satisfies the positive criteria." *Id.* at 332, 704 *A.*2d 1271. The facts in the present case are similar to those in *Smart* and I conclude, therefore, that Comcast's proposed use in the present case also satisfies the

positive criteria. I do not understand the majority opinion to contest that finding.

In *Smart*, the Supreme Court concluded "that Smart has established that the requested variance may be granted without substantial detriment to the public good." *Id.* at 332, 704 *A*.2d 1271. In doing so the Court engaged in the following analysis:

> The proposed use, moreover, will not substantially impair Fair Lawn's zone plan or zoning ordinance. Compelling evidence supports the conclusion that the Fair Lawn site is particularly suited for the proposed use. Additionally, any detrimental effects resulting from the grant of the variance will be minimal. Nothing in the record permits a contrary conclusion. The proposed use will produce no noise, vibrations, smoke, dust, odors, heat, or glare. It would require infrequent maintenance and little or no municipal services such as water, sewer, police or fire.
>
> On the record before us, the proposed ESMR monopole would not substantially impair Fair Lawn's zone plan. Although the Fair Lawn site abuts a residential zone, the site is still zoned for industrial use and is surrounded on three sides by commercial and industrial uses. Because Smart and NYNEX offered to take down NYNEX's existing 90–foot monopole and to co-locate their antennas on one 140–foot monopole, the proposed use would result in merely a 50–foot increase in height. That increase would not substantially alter the Fair Lawn skyline. *See Nynex, supra,* 276 *N.J.Super.* at 612, 648 *A*.2d 724 (finding addition of 8 to 10 feet of antenna on top of existing 130–foot water tower was "aesthetically inconsequential and minimal intensification of the nonconformity"); *Kingwood, supra,* 272 *N.J.Super.* at 509, 640 *A*.2d 356 (holding that replacement of 75–foot tower with 197–foot tower would impose, at most, minimal intrusion on surrounding community).
>
> [*Id.* at 333, 704 *A*.2d 1271.]

The Court in this analysis of the *Smart* facts could have been talking about Comcast's application; they are that similar. As I pointed out in my initial dissent, Comcast's "proposed location of the monopole in [South Plainfield's] most permissive industrial zone is the most important fact in this case." *New Brunswick Cellular Tel. Co., supra,* 305 *N.J.Super.* at 175, 701 *A*.2d 1281 (D'Annunzio, J. dissenting).

The Court in *Smart* also concluded that the real estate agent's testimony regarding an alleged adverse impact on property values was a "net opinion." 152 *N.J.* at 334, 704 *A*.2d 1271. Similarly, in *New Brunswick Cellular Tel. Co., supra,* I concluded that the objectors' planning expert's testimony "that desirable manufacturing and office users would not seek to locate in the M–3 zone if the

pole is installed" was a "startling statement" unsupported by "empirical evidence." 305 *N.J.Super.* at 175, 701 *A.*2d 1281.

Once again, I would affirm the Law Division's reversal of the Board of Adjustment's denial of Comcast's variance application.